**In re William Roger GRIBBINS, Loreda Gribbins, Debtors.**

**Bankruptcy No. 87–32748(2)12.**

United States Bankruptcy Court, W.D. Kentucky, Louisville Division.

Nov. 24, 1999.

Theodore Lavitt, Lebanon, KY, for debtors.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is once again before this Court, this time on the Motion of the Debtors, William and Loreda Gribbins ("Debtors"), to Reopen their Chapter 12 bankruptcy case and to Set Aside/Vacate this Court's July 8, 1998 Order of Dismissal, or in the Alternative, to Enter Appropriate Order as to Effect of Dismissal. This Chapter 12 bankruptcy action was originally filed in October of 1987, twelve years ago. After being dismissed by this Court in February of 1989 and making a voyage through the appellate process, first to the United States District Court, where the dismissal was affirmed, and then to the Sixth Circuit Court of Appeals, the Debtors were able to reach an Agreement with their three major Creditors whereupon the Appeal was dismissed by agreement and the bankruptcy case reinstated in this Court. The Debtor's Chapter 12 Plan was confirmed on January 28, 1991. Pursuant to the terms of the confirmed Plan and the terms of the Agreement reached with the major creditors on appeal, the Debtors proceeded to make payments outside the Plan on their secured debt. In 1998, the United States Trustee ("UST") moved the Court to dismiss the bankruptcy action for the Debtors' failure to make any payments to the Trustee of disposable income for distribution to the unsecured creditors. The Debtors did not object. Accordingly, the Court sustained the UST's Motion and dismissed the case for the second time. One full year thereafter, the Debtors filed the present Motion to Reopen Case and Set Aside/Vacate Order of Dismissal, or in Alternative, to Enter Appropriate Order as to Effect of Dismissal. Farm Credit

Services of Mid–America, ACA (formerly known as Federal Land Bank of Louisville and hereafter referred to as "Farm Credit") filed an Objection to the Debtors' Motion.

The dispute in this case centers around the issue of whether the Debtors' Chapter 12 Plan required them to pay their disposable income to the Chapter 12 Trustee for distribution to the unsecured creditors. Having fully reviewed the briefs filed by both parties, including the Debtors' Reply and Farm Credit's Sur–Reply, and having reviewed the entire file, including the Plan and the Agreed Orders executed by the parties at the Sixth Circuit Court of Appeals and in this Court, the Court finds that the Order of Confirmation incorporates the requirement that the Debtors pay their disposable income to the Trustee for distribution. The Debtors not only failed to comply with that requirement, but additionally failed to file monthly operating reports and annual financial statements, both of which were required by the Plan, and failed to complete their Plan within five years as required by § 1222(c) of the Bankruptcy Code. Thus, the Court finds that dismissal of the Debtors' Chapter 12 case on July 9, 1998 was appropriate, and their Motion to set that Order aside will, accordingly, be overruled for the reasons elaborated upon as follows.

### FACTS

The Debtors' bankruptcy action commenced more than 12 years ago, when they filed their petition under Chapter 12 on October 16, 1987. Confirmation of the Debtors' first Plan of Reorganization was denied. They filed a "Modified Plan" thereafter, on May 23, 1988, which was similarly denied. On November 2, 1988, the Debtors filed a Second Amended Plan. A number of creditors filed Objections to that Plan, and an evidentiary hearing was held on February 7, 1989. After hearing the testimony of witnesses and considering the arguments of counsel, the Court issued its ruling from the bench, both denying confirmation of the Second Amended Plan and dismissing the Debtors' bankruptcy action.

Thereafter, the Debtors appealed the dismissal of their bankruptcy action to the United States District Court for the Western District of Kentucky. The District Court affirmed the Bankruptcy Court's Order of Dismissal, whereupon the Debtors appealed the case to Sixth Circuit Court of Appeals. During the pendency of that appeal, the Debtors were able to negotiate a settlement with their three major creditors, Farm Credit (known at that time as the Federal Land Bank), Farmers National Bank of Lebanon ("Farmers"), and Peoples Bank ("Peoples"). Pursuant to the negotiated Agreement: (1) the appeal was to be dismissed; (2) the Chapter 12 bankruptcy was to be reinstated in the Bankruptcy Court; and (3) the Debtors were to pay certain agreed upon amounts to Farm Credit, Farmers and Peoples. Peoples was paid Debtor Roger Gribbins' distribution from his deceased mother's estate. With regard to the claims of Farm Credit and Farmers, the parties agreed that the Debtors would file a Third Amended Plan of Reorganization in the Bankruptcy Court that would incorporate those claims. Specifically, it was agreed that Farmers would receive annual payments on two claims: (1) the first in the amount of $50,125.00 amortized over 10 years; and (2) the second in the amount of $45,600.00 amortized over seven years. It was agreed that Farm Credit's secured claim in the amount of $138,432.00 would be amortized over 30 years, and that Farm Credit would retain a judgment lien on the real estate inherited from Mr. Gribbins' mother, until such time as the claim was satisfied. Pursuant to the parties' negotiated settlement, the payments to Farmers and Farm Credit were to be paid directly to those two creditors "outside the plan" that Debtors agreed to file. Finally, the parties additionally agreed that the Debtors would dismiss with prejudice a State Court action in Marion Circuit Court against Farm Credit for abuse of process,

which they promptly did, and that the Debtors would file monthly operating reports and a current financial statement on each anniversary date of confirmation.

In accordance with the terms of the settlement, the parties filed an Agreed Order Dismissing Appeal and Remanding and Reinstating Chapter 12 Bankruptcy with the Sixth Circuit on April 18, 1990. The Agreed Order specifically set out the terms of the parties' settlement agreement and was signed by counsel for Farmers, Farm Credit and the Debtors. Peoples did not sign the Agreed Order, their claim having been paid in full and released. In reviewing the Agreed Order, the Court specifically notes that the parties agreed to treat Farmers as having an unsecured claim in the sum of $3,480.00 and provided that Farmers "shall receive pro rata distributions made to unsecured creditors under the terms of the amended plan" that Debtors agreed to file within 30 days of the Agreed Order (Paragraph 4, sub-paragraph (h)).

Pursuant to the Agreed Order, the Sixth Circuit appeal was dismissed and the case was remanded back and reinstated in the Bankruptcy Court. Thereafter, the Debtors filed their Third Amended Plan of Reorganization on July 2, 1990. The Court has reviewed that Plan and finds that it is one page in length, with a Liquidation Analysis and Summary of Operations attached thereto and filed in toto therewith. The Plan, itself, lists the secured claims of Farm Credit and Farmers, and sets forth the amortized payments agreed to by the parties. The Plan additionally references the claim of Warner Fertilizer Co., Inc. and states that the secured status thereof was the subject of dispute, and acknowledges the judgment lien held by Farm Credit on the real estate inherited from Mr. Gribbins' mother. The Plan does not expressly address the Debtors' unsecured claims. Nevertheless, the Summary of Operations attached thereto and filed therewith expressly states that there would be an annual amount of $51,-944.00 of "disposable income available to pay unsecured claims."

On November 8, 1990, shortly after filing the Third Amended Plan and before confirmation, the parties tendered an Agreed Order amending the parties' Agreed Order Dismissing Appeal and Remanding and Reinstating Chapter 12 case. This second Agreed Order clarified that Farm Credit was additionally to maintain an unsecured claim and would "share pro rata in any dividends to be paid to unsecured claimants under the plan" (paragraph 2).

There were no objections to the Plan, and on January 28, 1991, the Court entered its Order Confirming the Third Amended Chapter 12 Plan of Debtors. The Order incorporates by reference the Liquidation Analysis, the Agreed Order Dismissing Appeal and Remanding and Reinstating Chapter 12 Bankruptcy entered in the Sixth Circuit Court of Appeals, and the November 8, 1990 Agreed Order Amending the prior Agreed Order. In fact, the Debtors have expressly conceded in their briefs that the Confirmation Order incorporates by reference the two Agreed Orders (Debtors' Memorandum in Support of Motion at 3; Debtors' Reply at 3). The Court additionally finds that it was the intention and understanding of the Court and the parties to incorporate the Summary of Operations which was also attached to the Third Amended Plan and filed part and parcel therewith. As discussed above, the two Agreed Orders provided that Farm Credit and Farmers would share in the Pro Rata distribution to the unsecured creditors, and the Summary of Operations stated that there would be $51,944.00 of disposable income available for distribution to the unsecured claimants. Additionally, the language of the Order of Confirmation directs that payments be made to the Chapter 12 Trustee for distribution. The Order states in pertinent part, on page two:

IT IS ORDERED AND ADJUDGED that all payments shall be made to the

standing trustee. Payments received by the standing trustee shall be applied in accordance with the provision of the Plan.

It is clear from reading all of these documents together that it was the intention and understanding of the parties that the Debtors would pay disposable income to the Trustee, who would distribute it among the unsecured claimants. It is also clear that the Court intended to and understood that to be part of the Plan it was confirming.

No Motions to Reconsider, Vacate or Set Aside the Order of Confirmation were filed. Nor were any Motions to Alter, Amend or Clarify the Order filed. The Court finds it interesting that the Debtors now for the first time, more than 8½ years after entry of that Order, take the position that the language in the Order directing payments to be made to the Trustee was "an error" (Debtors' Reply at 3). The Court finds the Debtors' assertion at this point in time to be disingenuous.

Following confirmation of the Plan, the Debtors made all of the payments required to be paid directly to Farmers and Farm Credit as they became due. It appears that the secured portion of the debt owed to Farmers was eventually paid in full. With regard to Farm Credit, the Debtors have never missed a payment and over the course of the ensuing years they assert they have paid approximately $130,000.00 on that debt. The Court notes, however, that Exhibit P prepared by the Debtors shows total payments of only $91,000.00 from 1991 to 1998. Significantly, the Debtors have not made any payments at any time following confirmation to the Chapter 12 Trustee of their disposable income for distribution to the unsecured claimants. Nor have the Debtors at any time complied with the reporting requirements. Consequently, on June 15, 1998, the UST moved to Dismiss the Debtors' Chapter 12 bankruptcy case. The Debtors did not file an Objection to the UST's Motion to Dismiss; nor did any other par-

ty in interest. The Court conducted a hearing on this matter on July 9, 1998, and at the conclusion of the hearing sustained the UST's Motion, dismissing the case. Slightly more than a full year later, on July 15, 1999, the Debtors filed the Motion presently before the Court to Reopen the Case and Set Aside/Vacate the Order of Dismissal. This Motion was apparently motivated by Farm Credit's reinstitution of two State Court foreclosure suits against the Debtors.

### LEGAL ANALYSIS

The Court finds that dismissal of the Debtors' Chapter 12 bankruptcy was appropriate and is supported by two grounds: (1) the Debtors' failure to comply with the requirements of their confirmed Plan, both in terms of their failure to pay their disposable income to the Chapter 12 Trustee and their failure to file monthly operating reports and annual financial statements; and (2) failure of their Plan to be completed within five years, as required by 11 U.S.C. § 1222(c).

### A. DEBTORS' FAILURE TO COMPLY WITH PROVISIONS OF THE CONFIRMED PLAN.

The Debtors seek to persuade this Court to find that the confirmed Plan did not require them to make any payments of their disposable income to the standing Trustee for distribution to the unsecured claimants. This Court is not so persuaded. To the contrary, it finds that the Plan as confirmed did in fact obligate the Debtors to pay their disposable income to the Trustee for payment of the unsecured claims. As addressed at great length above, the Order of Confirmation incorporated by reference the April 18, 1990 Agreed Order Dismissing Appeal and Remanding and Reinstating Chapter 12 Bankruptcy, the Agreed Order entered November 8, 1990 amending the April 18, 1990 Agreed Order, as well as the Liquidation Analysis and the Summary of Operations. The Agreed Orders provided that

Farmers and Farm Credit were to share pro rata in distributions to the unsecured claimants paid out by the Chapter 12 Trustee, with regard to the unsecured portions of their claims. The Summary of Operations stated that there would be an annual amount of $51,944.00 of "disposable income available to pay unsecured claims." This was the Debtors' only evidence in support of their Plan. Finally, the Confirmation Order directs the Debtors to make payments to the Chapter 12 Trustee for distribution. Thus, the Court finds that the Plan did in fact require the Debtors to pay their disposable income to the Chapter 12 Trustee for distribution.

█ The Debtors did not object to the language of the Court's Order of Confirmation. They did not file a Motion to Reconsider, Vacate, or Set Aside the Order. Nor did they file a Motion to Amend, Alter or Clarify the Order. Accordingly, it became the law of the case.

The Court finds that the Debtors failed to comply with the requirements of their Plan. It is undisputed that the Debtors never made any payments to the Chapter 12 Trustee during the course of this Plan. Accordingly, no disbursements have ever been made to the unsecured creditors.

The Debtors have additionally failed to comply with the Plan by their failure to file monthly operating reports and annual financial statements. The April 18, 1990 Agreed Order Dismissing Appeal and Remanding and Reinstating Chapter 12 Bankruptcy expressly required the Debtors to file both types of financial reports. As that Agreed Order was incorporated by reference by the Order of Confirmation, the Debtors were obligated to file both types of financial reports. Again, it is undisputed that the Debtors never filed either a monthly operating report or an annual financial statement during the course of their Plan. The Debtors attempt to explain this by alleging that Counsel for Farm Credit excused them from complying with this obligation. The Court has thoroughly reviewed the file and finds that

the Debtors' assertion is simply not supported by any documentation in the record. There is absolutely nothing in the record to support a finding that the Debtors were relieved from their reporting obligations.

█ Based on the Debtors' failure to comply with these terms and requirements of their confirmed Plan, the Court finds that dismissal of their Chapter 12 case was the appropriate course. *In re Grimm*, 145 B.R. 994 (Bankr.S.D.1992) (Court held that the debtor's failure to complete all plan payments precluded discharge and were grounds for dismissal of the case); *accord In re Bowlby*, 113 B.R. 983 (Bankr.S.D.Ill. 1990) (Creditor's Objection to Discharge sustained on basis of debtor's failure to make payments of disposable income under his Chapter 12 Plan); *In re Soper*, 152 B.R. 985 (Bankr.D.Kan.1993) ("If the Debtor defaults on plan payments and the case is dismissed, no discharge is granted to the Debtor and the Creditors are free to pursue collection of their full claims in other forums.").

## B. *DEBTOR'S FAILURE TO COMPLETE PLAN WITHIN FIVE YEARS PER 11 U.S.C. § 1222(c).*

█ Section 1222(c) of the Bankruptcy Code limits a Chapter 12 plan's period to a maximum of five years. The Debtors' Chapter 12 Plan was pending for *eleven* years at the time this Court entered its Order of Dismissal. While § 1222(b)(5) does permit payments outside of the Plan in excess of five years, as occurred in this case, the payments *under* the Plan must still be completed within the required five year period. *In re Whitby*, 146 B.R. 19 (Bankr.D.Idaho 1992). In this case, the Debtors failed to make any of the required payments under the Plan, as well as failed to file the monthly operating reports and annual financial statements required by the Plan. Accordingly, the Debtors' Chapter 12 Plan, having continued far beyond

the maximum five year period, clearly warranted dismissal.

### C. TRUSTEE'S DELAY IN MOVING FOR DISMISSAL DID NOT PREJUDICE THE DEBTORS.

Finally, the Debtors complain that they have been prejudiced by the UST's delay in filing the Motion to Dismiss. The Debtors' Third Amended Chapter 12 Plan was confirmed on January 28, 1991. The UST waited until June of 1998 to file the Motion to Dismiss. During the interim, the Debtors made all of the required payments *outside* of the Plan. The Court finds that the Debtors have not been prejudiced by the UST's delay in filing the Motion to Dismiss. The debt owed to Farm Credit was a secured debt which required the payment of interest. With a 30 year amortization, most of the payments made are attributable to interest, with little reduction in principal. According to Exhibit P prepared by the Debtors, it appears that of the $91,000.00 reported as having been paid, all but only a total of $2,400.00 were interest payments. The Debtors were required by the settlement agreement negotiated with Farm Credit to make the payments it made. The Court notes that the bankruptcy was pending for 11 years. During the course of this time, the Debtors were able to retain their farm, and Farm Credit was precluded from pursuing any of its state law remedies. The Court specifically notes that the Debtors' retention of their farm exceeds by *six years* the period over which the Bankruptcy Code permits a Chapter 12 to be administered. If any party has been prejudiced, it appears that it is more likely Farm Credit.

### CONCLUSION

For the above stated reasons, the Court will by Separate Order overrule the Debtors' Motion to Reopen their Chapter 12 Bankruptcy Case and Set Aside/Vacate Order of Dismissal, or in Alternative to Enter Appropriate Order as to Effect of Dismissal. Accordingly, no discharge will be granted as to any debt for which payments remain to be made, including the debt owed to Farm Credit. The parties are, therefore, free to pursue their State law rights and remedies, which would include foreclosure proceedings, as well as actions to enforce the parties' settlement agreement or for breach thereof.